IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

──────────────────

JOHN D. JUSTICE,

                   Plaintiff,      Civil Action No.
        v.                   9:11-CV-0419 (GLS/DEP)

WILLIAM HULIHAN, *et al.,*

               Defendants.

──────────────────

APPEARANCES:              OF COUNSEL:

FOR PLAINTIFF:

JOHN D. JUSTICE, *Pro Se*
87-B-0385
Great Meadow Correctional Facility
P.O. Box 51
Comstock, NY 12821

FOR DEFENDANTS:

HON. ERIC T. SCHNEIDERMAN    CATHY Y. SHEEHAN, ESQ.
Attorney General of the           Assistant Attorney General
State of New York
The Capitol
Albany, NY 12224-0341

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

*Pro se* plaintiff John D. Justice, a New York State prison inmate, has commenced this action pursuant to 42 U.S.C. § 1983 alleging deprivation of his civil rights. Following the court's initial review of that complaint, only two causes of action remain, including an Eighth Amendment claim, arising from allegations that corrections workers employed at the facility in which plaintiff was confined at the relevant times failed to protect him from an assault by a fellow inmate, and a Fourteenth Amendment claim, arising from allegations that evidence was intentionally withheld from the plaintiff during a disciplinary hearing.

Currently pending before the court is a motion brought by three of the four remaining defendants seeking the entry of summary judgment dismissing plaintiff's claims against them on various grounds, related both to the merits and based upon qualified immunity. For the reasons set forth below, I recommend that defendants' motion be granted, and that plaintiff's remaining claims be dismissed.

I.    BACKGROUND[1]

Plaintiff is a prison inmate currently being held in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). Complaint (Dkt. No. 1) at 2. Plaintiff's incarceration dates back to 1987, with an intervening period of release between September 2005 and July 2007. Sheehan Aff. Exh. A (Dkt. No. 41-2) at 13, 77.

A.    Plaintiff's Altercation With Inmate McAleese

In the morning of July 26, 2008, while incarcerated in the Mid-State Correctional Facility ("Mid-State"), located in Marcy, New York, plaintiff became involved in an altercation with Sean McAleese, a fellow inmate. Complaint (Dkt. No. 1) at 15; Sheehan Aff. Exh. A (Dkt. No. 41-2) at 17. The incident arose during a discussion between plaintiff and Inmate McAleese, who at the time served as the clerk for plaintiff's housing unit, concerning the possibility of Justice transferring from a double cell to a singe cell. Sheehan Aff. Exh. A (Dkt. No. 41-2) at 17-25. At one point during the conversation, Inmate McAleese struck plaintiff in the face with his right hand, causing plaintiff to suffer a facial injury that required

_____

[1]    In light of the procedural posture of the case the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in favor of the plaintiff. *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

hospital treatment. *Id.* at 25; Complaint (Dkt. No. 1) at 17. Although plaintiff did not immediately report the incident to Mid-State corrections staff, he did eventually seek medical attention later that morning from defendant R. Wiggins, a corrections officer employed at the facility. Sheehan Aff. Exh. A (Dkt. No. 41-2) at 28-29. Plaintiff was subsequently interviewed regarding the incident by Corrections Sergeant LaTore, who is not a party to this action, and was first taken to the prison infirmary for his injuries, and later transported to hospitals in Utica, and Syracuse, New York. *Id.* at 29; Complaint (Dkt. No. 1) at 17.

Both plaintiff and inmate McAleese received misbehavior reports as a result of the incident, accusing them of violating prison rules. Sheehan Aff. Exh. B (Dkt. No. 41-3) at # 11; Sheehan Aff. Exh. D (Dkt. No. 41-5) at # 5. Following a disciplinary hearing, Justice was found guilty only of failing to report an injury, and sentenced to a thirty-day period of disciplinary special housing unit confinement, with no loss of privileges or good time credits. Sheehan Aff. Exh. A (Dkt. No. 41-2) at 44-45. On September 22, 2008, that determination was upheld on appeal by Norman R. Bezio, the Director of Special Housing/Inmate Disciplinary Program for the DOCCS. Sheehan Aff. Exh. I (Dkt. No. 41-10) at 2.

During the disciplinary hearing addressing the charges arising from plaintiff's altercation with Inmate McAleese, it is alleged that plaintiff requested a copy of the unusual incident ("UI") report that was generated as a result of the incident. Complaint (Dkt. No. 1) at 35. Although the hearing officer presiding over the disciplinary proceeding denied plaintiff's request based on the belief that the report did not exist, the New York State Attorney General's Office produced the UI report to plaintiff on March 13, 2009, suggesting it was in existence at the time of plaintiff's disciplinary hearing. *Id.*

B.    Plaintiff's Letter to District Judge Arcara

In early July 2008, someone at Mid-State notified plaintiff that he "was . . . creating waves" at the facility because he was elected to serve on the Inmate Grievance Resolution Committee ("IGRC") as an alternate inmate representative, and worked as a paralegal in the law library. Sheehan Aff. Exh. A (Dkt. No. 41-2) at 51. Plaintiff also "heard rumors that the facility [did not] want [him] on the grievance committee[,] . . . that they actually wanted [him[ out of the [facility,] [a]nd that they were going to either set [him] up with a weapon or a drug charge, just to get [him] out of the [facility]." *Id.* at 52. Upon learning of these rumors, plaintiff informed

defendants Tapia, Hulihan, and Fischer of them by way of a letter addressed to District Judge Richard J. Arcara from the Western District of New York. *Id.* at 51, 54, 55, 86-87. At his deposition, plaintiff testified that he sent a copy of the letter to those defendants through Mid-State's facility mail. *Id.* at 55-6. The record is not clear whether defendant Fischer received the letter, though plaintiff testified that he did not receive a response from him. Sheehan Aff. Exh. A (Dkt. No. 41-2) at 57. Defendant Hulihan did not receive the letter. Sheehan Aff. Exh. B (Dkt. No. 41-3) at ¶ 7; Sheehan Aff. Exh. C (Dkt. No. 41-4) at 1-2. Defendant Tapia received the letter, but states that it was one of "several letters of perceived threats or fear for safety" he receives each week, and that the letters "are routinely referred to security staff[.]" Sheehan Aff. Exh. G (Dkt. No. 41-8) at ¶ 15. The Western District of New York did not respond to plaintiff's letter.[2] Sheehan Aff. Exh. A (Dkt. No. 41-2) at 59.

---

[2]    Plaintiff suggests that the Western District did, in fact, respond to his letter dated July 18, 2008. Plf.'s L.R. 7.1(a)(3) Statement (Dkt. No. 45) at ¶ 34. The letter from the Western District to which plaintiff cites for this proposition, however, responds to two letters sent by plaintiff dated July 28, and August 8, 2008. Plf.'s Aff. Exh. B (Dkt. No. 45-2) at 27-29.

## II.    PROCEDURAL HISTORY

Plaintiff commenced this action on April 15, 2011, by the filing of a complaint and an accompanying *in forma pauperis* ("IFP") application. Dkt. Nos. 1, 2. As drafted, plaintiff's complaint asserted eight separate causes of action against twelve defendants. *See generally* Complaint (Dkt. No. 1). Following his initial review of the complaint, Chief District Judge Gary L. Sharpe issued a decision on September 12, 2011, granting plaintiff IFP status, and dismissing all but two causes of action against four separate defendants. Dkt. No. 8. As a result of that decision, the claims that remain in this action include (1) a cause of action for failure to protect plaintiff from Inmate McAleese's assault, asserted against defendants William Hulihan, the superintendent at Mid-State, Charles Tapia, supervisor of the inmate grievance program at the facility, and R. Wiggins, a corrections officer stationed at Mid-State; and (2) a due process violation based on the failure to provide plaintiff with the UI report during his disciplinary proceeding, against Brian Fischer, Commissioner of the DOCCS.

Following the close of discovery, defendants Fischer, Hulihan, and Tapia moved, on October 9, 2012, for summary judgment dismissing plaintiff's remaining claims. Dkt. No. 41. In their motion, defendants argue

that (1) the record evidence fails to reveal that defendants Fischer, Hulihan, and Tapia were personally involved in any of the allegations giving rise to plaintiff's claims; (2) the record contains no evidence that either defendant Hulihan or Tapia had actual or constructive knowledge that plaintiff was in danger of an attack from Inmate McAleese; and (3) defendants Fischer, Hulihan, and Tapia are entitled to qualified immunity from suit. *See generally* Defs.' Memo. of Law (Dkt. No. 41-15). Plaintiff has responded in opposition to defendants' motion, Dkt. Nos. 44, 45, and defendants have submitted a reply in further support of their motion, Dkt. No. 46. Defendants' motion, which is now fully briefed and ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

A.   Summary Judgment Standard

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as

a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004). A fact is "material" for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue, and the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4; *Sec. Ins. Co.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the

nonmoving party. *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002); *see also Anderson,* 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

B.   Plaintiff's Eighth Amendment Claims Against Defendants Hulihan, Tapia, and Wiggins[3]

Plaintiff's complaint asserts Eighth Amendment claims against defendants Hulihan, Tapia, and Wiggins. The claims against defendants

---

[3]     Defendants' motion is equivocal concerning its scope. In defendants' memorandum in support of their motion, which they refer to as seeking partial summary judgement, defendants seek dismissal of plaintiff's claims asserted only against defendants Fischer, Hulihan, and Tapia. Defs.' Memo of Law (Dkt. No. 41-15) at 3. In their notice of motion, however, they state that all defendants, including defendant Wiggins, seek dismissal. Notice of Motion (Dkt. No. 41). Additionally, defendants submitted defendant Wiggins' responses to plaintiff's discovery requests, including requests for admissions and interrogatories. Sheehan Aff. Exhs. D & E (Dkt. Nos. 41-5, 41-6). Accordingly, in the interest of judicial efficiency, I have *sua sponte* considered whether there is sufficient record evidence to support an Eighth Amendment claim against defendant Wiggins. To the extent the parties have additional evidence to support their positions as it relates to this claim, they may argue to Chief District Judge Sharpe, in their objections to my report, why he should consider such additional evidence. *See United States v. Raddatz*, 447 U.S. 667, 676 (1980) (holding that a district judge need not "rehear the witnesses" previously considered by magistrate judges); *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am.*, 894 F.2d 36, 40 n.3 (2d Cir. 1990) ("A district judge is not required to hear or rehear any witness[.]" (citing *Raddatz*, 447 U.S. at 676)).

Hulihan and Tapia arise from their alleged failure to protect plaintiff from Inmate McAleese's assault. The claim against defendant Wiggins arises from his alleged authorization of the assault on plaintiff. After carefully considering all of the record evidence, I recommend that all claims asserted against those defendants be dismissed.

### 1. Legal Principles

The Eighth Amendment prohibits punishment that is "incompatible with 'the evolving standards of decency that mark the progress of a maturing society[,]' or 'involve[s] the unnecessary and wanton infliction of pain[.]'" *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976) (quoting *Trop v. Dulles*, 356 U.S. 86, 100-01 (1958) and *Gregg v. Georgia*, 428 U.S. 153, 169-73 (1976) (internal citations omitted)). While the Eighth Amendment "'does not mandate comfortable prisons,' neither does it permit inhumane ones*." Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 349 (1981)).

Law enforcement officers have a duty to intervene and prevent a cruel and unusual punishment from occurring or continuing. *Farmer*, 511 U.S. at 836; *Hayes v. New York City Dep't of Corrs*, 84 F.3d 614, 620 (2d Cir. 1996); *see also Ayers v. Coughlin*, 780 F.2d 205, 209 (2d Cir. 1985)

("The failure of custodial officers to employ reasonable measures to protect an inmate from violence by other prison residents has been considered cruel and unusual punishment."). A plaintiff asserting a failure to protect claim must prove that the defendant actually knew of and disregarded an excessive risk of harm to his health and safety. *Hayes*, 84 F.3d at 620. This "reckless disregard" to a plaintiff's health and safety can be proven by evidence establishing "a pervasive risk of harm to inmates from other prisoners and a failure by prison officials to reasonably respond to that risk." *Knowles v. New York City Dep't of Corrs.*, 904 F. Supp. 217, 222 (S.D.N.Y. 1995) (internal quotation marks omitted). Said differently, to establish liability on the part of a defendant under this theory, "the plaintiff must adduce evidence establishing that the officer had (1) a realistic opportunity to intervene and prevent the harm, (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated, and (3) that officer does not take reasonable steps to intervene." *Henry v. Dinelle*, No. 10-CV-0456, 2011 WL 5975027, at *4 (N.D.N.Y. Nov. 29, 2011) (Suddaby, J.) (citing *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008)); *see also Farmer*, 511 U.S. at 842 ("[I]t is enough that the official acted or failed to act despite his

knowledge of a substantial risk of serious harm."); *O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988) (finding no realistic opportunity to intervene where "three blows were struck in . . . rapid succession").[4]

## 2. Analysis

In this case, addressing first the claim asserted against defendant Wiggins, the only record evidence supporting plaintiff's allegation that defendant Wiggins authorized Inmate McAleese's assault of plaintiff are statements made by him during hisdeposition and in his verified complaint. Complaint (Dkt. No. 1) at 17; Sheehan Aff. Exh. A (Dkt. No. 41-2) at 64-66. More specifically, plaintiff testified that he was informed by another inmate, Eslay Martinez, that defendant Wiggins gave Inmate McAleese the "green light to get after [him]" if he caused trouble for "anybody." Sheehan Aff. Exh. A (Dkt. No. 41-2) at 64. In light of the fact that this evidence represents double hearsay, and plaintiff has failed to submit any additional evidence or argument suggesting that it would be admissible at trial, plaintiff cannot rely on it in opposing defendants' motion. *See Burlington Coat Factory Warehouse Corp. v. Esprit de Corp.*, 769 F.2d 919, 924 (2d Cir. 1985) ("[A party] cannot rely on inadmissible

---

[4] All unreported decisions have been appended to this report for the convenience of the *pro se* plaintiff.

hearsay in opposing a motion for summary judgment."); *accord*, *Chansamone v. IBEW Local 97*, No. 12-CV-1976, 2013 WL 1846488, at *1 n.4 (2d Cir. May 3, 2013). In addition, defendant Wiggins expressly denies hiring Inmate McAleese to assault plaintiff. Sheehan Aff. Exh. D (Dkt. No. 41-5) at ¶ 6; Sheehan Aff. Exh. E (Dkt. No. 41-6) at ¶ 1. Based on the record now before me, I find that no reasonable factfinder could conclude that defendant Wiggins authorized Inmate McAleese to assault plaintiff. Therefore, I recommend the Eighth Amendment claim asserted against him be dismissed.

Turning to the allegations forming the basis for the claims asserted against defendants Hulihan and Tapia, it is alleged that those two defendants violated plaintiff's Eighth Amendment rights when they failed to take any action to protect him from Inmate McAleese's assault. Complaint (Dkt. No. 1) at 16; Sheehan Aff. Exh. A (Dkt. No. 41-2) at 55. The record evidence, however, does not give rise to a genuine dispute of fact as to whether those two defendants knew of and disregarded an excessive risk of harm to plaintiff's health and safety, or, similarly, that either defendant had a reasonable opportunity to intervene. Plaintiff's letter addressed to Judge Arcara does not (1) specifically mention Inmate

McAleese, (2) indicate that plaintiff perceived a threat from Inmate McAleese, or (3) reflect plaintiff's fear that he was at risk of reprisal from any other inmate at Mid-State. Sheehan Aff. Exh. A (Dkt. No. 41-2) at 86-87. Instead, the letter expresses plaintiff's concern that "Facility Administration" would retaliate against him based upon his position as an alternate inmate representative for the facility's IGRC. *Id.* Similarly, during his deposition, plaintiff testified that he alerted defendant Tapia in the early weeks of July 2008 of his perceived risk that prison officials might "either set [him] up with a weapon or a drug charge, just to get [him] out of the [facility.]" *Id.* at 51. Because there is no indication in the letter that plaintiff believed he was at risk of harm by a fellow inmate, it cannot be said that defendants Hulihan and Tapia had an opportunity to respond in any meaningful way before plaintiff was assaulted.

Additionally, the record is equivocal as to whether defendant Hulihan received plaintiff's letter. *Compare* Defs.' L.R. 7.1(a)(3) Statement (Dkt. No. 41-14) at ¶ 36 *with* Plf.'s L.R. 7.1(a)(3) Statement (Dkt. No. 45) at ¶ 36. Even assuming that defendant Hulihan did receive the letter, moreover, mere receipt of a letter from an inmate is insufficient to satisfy the personal involvement requirement of a section 1983 action. *See*

*Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983." (internal quotation marks omitted)); *Greenwaldt v. Coughlin*, No. 93-CV-6551, 1995 WL 232736, at *4 (S.D.N.Y. Apr.19, 1995) ("[I]t is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations." (citing cases)).

Addressing plaintiff's allegations against defendant Tapia, although he admits to having received plaintiff's letter, he referred it to security staff in accordance with facility regulations. Sheehan Aff. Exh. G (Dkt. No. 8) at ¶ 15. A prison official's referral of a matter to the appropriate subordinate is not sufficient to establish personal involvement in a section 1983 claim. *See Goris v. Breslin*, 402 F. App'x 582, 584 (2d Cir. 2010) (affirming dismissal where personal involvement "was limited to the receipt of two letters from [the plaintiff], which [the defendant] promptly referred to other individuals for investigation and response"); *Sealey v. Glitner*, 116 F.3d 47, 51 (2d Cir. 1997) (affirming grant of summary judgment, in part, based

on a failure to establish personal involvement, where the plaintiff wrote two letters to the defendant, and the defendant referred one to a subordinate and responded to the second).

Based upon the record now before the court, no reasonable factfinder could conclude that either defendant Hulihan or Tapia knew of a substantial risk to plaintiff's health or safety, but failed to protect him from that risk. Accordingly, I recommend that plaintiff's failure to protect claim asserted against those two defendants be dismissed.

B.      Plaintiff's Due Process Claim Against Commissioner Fischer

In his complaint, plaintiff alleges that defendant Fischer denied plaintiff his procedural due process rights, in violation of the Fourteenth Amendment, in connection with his disciplinary hearing resulting from his altercation with Inmate McAleese on July 26, 2008. Complaint (Dkt. No. 1) at 34-36. More specifically, it is alleged that the hearing officer assigned to conduct the disciplinary hearing intentionally withheld the UI report generated as a result of the altercation. *Id.* Defendants seek dismissal of this claim based upon the lack of record evidence demonstrating defendant Fischer's personal involvement in the claimed deprivation. Defs.' Memo. of Law (Dkt. No. 41-15) at 8-9.

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983." *Wright*, 21 F.3d at 501 (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

Defendant Fischer, as the DOCCS commissioner, holds a supervisory role within the organization. Because the record is devoid of any evidence that he was directly involved in the allegations giving rise to plaintiff's due process claim, it appears that the cause of action hinges solely upon defendant Fischer's supervisory position. It is well-established that a supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor, "and [liability] cannot rest on *respondeat superior*." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501. To establish responsibility on the part of a supervisory official for a civil rights violation, a plaintiff must demonstrate that the individual (1) directly participated in the challenged conduct; (2) after

learning of the violation through a report or appeal, failed to remedy the wrong; (3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; (4) was grossly negligent in managing the subordinates who caused the unlawful event; or (5) failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty*, 490 F.3d 143, 152-53 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 554 (2009); *see also Richardson*, 347 F.3d at 435; *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir. 1995); *Wright*, 21 F.3d at 501.

In this case, even assuming, without deciding, that the failure to provide Justice with the requested UI report at his disciplinary hearing could support a due process violation, the record does not give rise to a material dispute as to whether defendant Fischer could be liable under any of the five methods prescribed in *Colon*, as discussed above. More specifically, there is no evidence that defendant Fisher (1) was directly involved in that decision, (2) ever learned of the alleged violation in time to remedy it, (3) created or perpetuated a policy that would suggest it was the DOCCS's practice to withhold UI reports from inmates, (4) acted negligently in managing any subordinates involved in the events giving

rise to this claim, or (5) was aware of any alleged unconstitutional violation such that he intentionally failed to act on it. *See generally* Complaint (Dkt. No. 1) at 34-36; Sheehan Aff. Exh. K (Dkt. No. 41-12) at ¶¶ 1-2. Accordingly, I recommend dismissal of plaintiff's due process claim asserted against defendant Fischer.

IV.    SUMMARY AND RECOMMENDATION

The record now before the court fails to disclose any basis upon which a reasonable factfinder could conclude that plaintiff was incarcerated at Mid-State under conditions posing a substantial risk of serious harm, or that the defendants Hulihan and Tapia exhibited deliberate indifference to any such danger. Accordingly, I recommend that plaintiff's failure to protect claim against those two defendants be dismissed. Additionally, because the record is devoid of any admissible record evidence that demonstrates a dispute of fact as to whether defendant Wiggins authorized Inmate McAleese to assault plaintiff, I recommend that the Eighth Amendment claim asserted against him be dismissed. Turning to plaintiff's due process claim, I recommend that it be dismissed as against the sole named defendant in connection with that claim, defendant Fischer, based upon lack of personal involvement. It is

therefore hereby respectfully

RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 41) be GRANTED, and that plaintiff's remaining claims in this action be dismissed in all respects.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:    July 16, 2013
             Syracuse, New York

David E. Peebles
U.S. Magistrate Judge

Slip Copy, 2011 WL 5975027 (N.D.N.Y.)

(Cite as: 2011 WL 5975027 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Jonathan HENRY, Plaintiff,
v.
James F. DINELLE, Corrections Officer; Russell E.
Duckett, Corrections Officer; Alfred J. Deluca,
Corrections Officer; Donald L. Broekema, Sergeant;
and Jean Norton, Nurse, Defendants.
No. 9:10–CV–0456 (GTS/DEP).

Nov. 29, 2011.

Sivin & Miller, LLP, Edward Sivin, Esq., of Counsel,
New York, NY, for Plaintiff.

Hon. Eric T. Schneiderman, Attorney General for the State
of New York, Timothy P. Mulvey, Esq., Assistant
Attorney General, of Counsel, Albany, NY, for
Defendants.

***MEMORANDUM–DECISION and ORDER***

Hon. GLENN T. SUDDABY, District Judge.

**\*1** Currently before the Court, in this prisoner civil
rights action filed by Jonathan Henry ("Plaintiff") against
the five above-captioned employees of the New York
State Department of Corrections and Community
Supervision ("Defendants"), is Defendants' motion for
partial summary judgment. (Dkt. No. 24.) For the reasons
set forth below, Defendants' motion is granted in part and
denied in part.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Claims

Generally, liberally construed, Plaintiff's Complaint
alleges that, between approximately January 29, 2009, and
January 31, 2009, at Ulster Correctional Facility in
Napanoch, New York, Defendants violated Plaintiff's
following rights in the following manner: (1) Defendants

Nurse Jean Norton, Corrections Officer James F. Dinelle,
Corrections Officer Russell E. Duckett and Corrections
Officer Alfred J. DeLuca violated Plaintiff's rights under
the First Amendment by filing retaliatory false
misbehavior reports against him, and subsequently
providing false testimony against him at administrative
disciplinary hearings, which resulted in his spending time
in the Special Housing Unit ("SHU"); (2) Defendant
Dinelle violated Plaintiff's rights under the Eighth
Amendment by assaulting him on two occasions, and
Defendants DeLuca and Duckett violated Plaintiff's rights
under the Eighth Amendment by assaulting him once; (3)
Defendant Sergeant Donald L. Broekema violated
Plaintiff's rights under the Eighth Amendment by failing to
intervene to prevent one of these assaults from occurring;
(4) Defendant Norton violated Plaintiff's rights under the
Eighth Amendment by harassing him almost immediately
before he was subjected to the above-described assaults;
and (5) Defendants Norton, Dinelle, Duckett and DeLuca
violated Plaintiff's rights under the Fourteenth Amendment
by performing the aforementioned acts, which constituted
atypical and significant hardships in relation to the
ordinary incidents of prison life. (*See generally* Dkt. No.
1 [Plf.'s Compl.].) Familiarity with the factual allegations
supporting these claims in Plaintiff's Complaint is assumed
in this Decision and Order, which is intended primarily for
review by the parties. (*Id.*)

### B. Undisputed Material Facts

At all times relevant to Plaintiff's Complaint, Plaintiff
was an inmate and Defendants were employees of the New
York State Department of Corrections and Community
Supervision at Ulster Correctional Facility. On January 30,
2009, Defendant Dinelle took Plaintiff to the medical
ward, because Plaintiff was experiencing a foul odor and
oozing from a wound on his leg. After Defendant Norton
treated Plaintiff, she filed an inmate misbehavior report
against Plaintiff based on (1) Plaintiff's harassing behavior
toward Defendant Norton and Defendant Dinelle, and (2)
Plaintiff's disobedience of a direct order to be quiet. The
misbehavior report was signed by Defendant Dinelle as an
employee witness.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 5975027 (N.D.N.Y.)

(Cite as: 2011 WL 5975027 (N.D.N.Y.))

At his deposition, Plaintiff testified, while leaving the infirmary, he was punched and kicked by Defendant Dinelle and two unknown prison officials. Plaintiff was then taken to the SHU, where he waited with Defendants Dinelle and Duckett, and up to three more individuals, for a sergeant to arrive. When Defendant Broekema (a sergeant) arrived at the SHU, Plaintiff was taken to a frisk room, where a frisk was conducted. During the frisk, Defendants Dinelle, Duckett and (Plaintiff suspected) DeLuca used force to bring Plaintiff to the ground. Plaintiff testified that, during the use of force, he was simultaneously punched in the nose by two officers while their supervisor watched.

**\*2** After the use of force, Plaintiff stated to Defendants Dinelle, Broekema and Duckette, "I will be contacting my attorney," or "I will be calling a lawyer."[FN1] Plaintiff never used the term "grievance" when addressing Defendants Dinelle, Broekema and Duckette (or Defendant Norton).[FN2] Subsequently, Defendant Duckett filed an inmate misbehavior report against Plaintiff based on his disobedience of frisk procedures and a direct order. Defendant DeLuca signed this report as a witness to the events.

> FN1. (*Compare* Dkt. No. 24, Attach. 9, at ¶ 17 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 27, Attach. 3, at ¶ 17 [Plf.'s Rule 7 .1 Response]; *see also* Dkt. No. 24, Attach. 4, at 100, 102–03 [attaching pages 216, 218 and 219 of Trans. of Plf.'s Depo.]; Dkt. No. 33, at 2–3 [attaching pages 228 and 229 of Trans. of Plf.'s Depo .].)

> FN2. (*Compare* Dkt. No. 24, Attach. 9, at ¶ 17 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 27, Attach. 3, at ¶ 17 [Plf.'s Rule 7 .1 Response]; *see also* Dkt. No. 24, Attach. 4, at 59–60, 100, 102–03 [attaching pages 175, 176, 216, 218 and 219 of Trans. of Plf.'s Depo.]; Dkt. No. 33, at 2–3 [attaching pages 228 and 229 of Trans. of Plf.'s Depo.].)

Familiarity with the remaining undisputed material facts of this action, as well as the disputed material facts, as set forth in the parties' Rule 7.1 Statement and Rule 7.1 Response, is assumed in this Decision and Order, which

(again) is intended primarily for review by the parties. (*Id.*)

**C. Defendants' Motion**

Generally, in support of their motion for partial summary judgment, Defendants argue as follows: (1) Plaintiff's claim that Defendants issued false misbehavior reports should be dismissed because Plaintiff has no constitutional right to be free of false misbehavior reports; (2) Plaintiff's First Amendment retaliation claim should be dismissed because he has failed to adduce admissible record evidence from which a rational factfinder could conclude that he (a) engaged in protected activity, or (b) suffered adverse action as a result of engaging in protected activity; (3) Plaintiff's Fourteenth Amendment substantive due process claim should be dismissed because he has failed to adduce admissible record evidence from which a rational factfinder could conclude that Defendants deprived Plaintiff of his liberty rights; (4) Plaintiff's Eighth Amendment excessive-force claim against Defendant Norton should be dismissed because Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that she (a) used force against Plaintiff, or (b) was in a position to prevent the use of force from occurring, yet failed to do so; (5) Plaintiff's Eighth Amendment excessive-force claim against Defendant DeLuca should be dismissed because Plaintiff's identification of Defendant DeLuca is "very tentative"; (6) Plaintiff's Eighth Amendment failure-to-intervene claim against Defendant Broekema should be dismissed because Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that Defendant Broekema had a realistic opportunity to intervene to prevent or stop the assault, yet failed to do so; and (7) Defendants are protected from liability, as a matter of law, by the doctrine of qualified immunity, under the circumstances. (*See generally* Dkt. No. 24, Attach. 10 [Defs.' Memo. of Law].)[FN3]

> FN3. In their motion, Defendants do not challenge the evidentiary sufficiency of Plaintiff's Eighth Amendment excessive-force claim against Defendants Dinelle or Duckett. (*See generally* Dkt. No. 24, Attach. 10 [Defs.' Memo. of Law].)

In Plaintiff's response to Defendants' motion for partial summary judgment, he argues as follows: (1) his

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 5975027 (N.D.N.Y.)

(Cite as: 2011 WL 5975027 (N.D.N.Y.))

retaliation claims should not be dismissed because there are triable issues of fact as to whether Defendants retaliated against him for stating that he would be contacting an attorney; (2) his failure-to-intervene claim against Defendant Broekema should not be dismissed because there are triable issues of fact as to whether Defendant Broekema failed to prevent excessive force from being used against him; (3) his excessive-force claim against Defendant DeLuca should not be dismissed because there are triable issues of fact as to whether Defendant DeLuca used excessive force against him; and (4) Defendants are not protected from liability, as a matter of law, by the doctrine of qualified immunity, under the circumstances. (*See generally* Dkt. No. 27, Attach. 5 [Plf.'s Response Memo. of Law].) FN4

> FN4. Plaintiff does not oppose Defendants' arguments that (1) Plaintiff's excessive-force claim against Defendant Norton should be dismissed, and (2) Plaintiff's substantive due process claim should be dismissed. (*See generally* Dkt. No. 27, Attach. 5 [Plf.'s Response Memo. of Law].)

**\*3** In their reply, Defendants essentially reiterate their previously advanced arguments. (*See generally* Dkt. No. 29, Attach. 1 [Defs .' Reply Memo. of Law].)

## II. RELEVANT LEGAL STANDARDS

### A. Legal Standard Governing Motions for Summary Judgment

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the legal standard governing motions for summary judgment, the Court will not recite that well-known legal standard in this Decision and Order, but will direct the reader to the Court's decision in *Pitts v. Onondaga Cnty. Sheriff's Dep't,* 04–CV–0828, 2009 WL 3165551, at \*2–3 (N.D.N.Y. Sept.29, 2009) (Suddaby, J.), which accurately recites that legal standard.

### B. Legal Standards Governing Plaintiff's Claims

### 1. First Amendment Retaliation Claim

Claims of retaliation like those asserted by Plaintiff find their roots in the First Amendment. *See Gill v. Pidlypchak,* 389 F.3d 379, 380–81 (2d Cir.2004). Central to such claims is the notion that, in a prison setting, corrections officials may not take actions which would have a chilling effect upon an inmate's exercise of his First Amendment rights. *See Gill,* 389 F.3d at 381–383. Because of the relative ease with which claims of retaliation can be incanted, however, courts have scrutinized such retaliation claims with particular care. *See Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983). As the Second Circuit has noted,

> [t]his is true for several reasons. First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated. Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.

*Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir.2001), *overruled on other grounds, Swierkewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

To prevail on a First Amendment claim under 42 U.S.C. § 1983, a plaintiff must prove by the preponderance of the evidence that (1) the speech or conduct at issue was "protected", (2) the defendants took "adverse action" against the plaintiff—namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights, and (3) there was a causal connection between the protected speech and the adverse action—in other words, that the protected conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Gill,* 389 F.3d at 380 (citing *Dawes v. Walker,* 239 F.3d 489, 492 [2d Cir.2001] ). Under this analysis, adverse action taken for both proper and improper reasons may be upheld if the action would have been taken based

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 5975027 (N.D.N.Y.)

(Cite as: 2011 WL 5975027 (N.D.N.Y.))

on the proper reasons alone. *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996).

**\*4** In determining whether an inmate has established a prima facie case of a causal connection between his protected activity and a prison official's adverse action, a number of factors may be considered, including the following: (1) the temporal proximity between the protected activity and the alleged retaliatory act; (2) the inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant concerning his motivation. *Reed v. A.W. Lawrence & Co.,* 95 F.3d 1170, 1178 (2d Cir.1996); *Baskerville v. Blot,* 224 F.Supp.2d 723, 732 (S.D.N.Y.2002). Even where the inmate has established such a prima facie case, the prison official may be entitled to judgment as a matter of law on the inmate's retaliation claim where the prison official has satisfied his burden of establishing that the adverse action would have been taken on proper grounds alone. *Lowrance v. Achtyl,* 20 F.3d 529, 535 (2d Cir.1994); *Jordan v. Garvin,* 01–CV–4393, 2004 WL 302361, at \*6 (S.D.N.Y. Feb.17, 2004).

## 2. Eighth Amendment Claims of Excessive–Force and Failure–to–Intervene

To establish a claim of excessive-force under the Eighth Amendment, a plaintiff must satisfy two components: "one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect." *Wright v. Goord,* 554 F.3d 255, 268 (2d Cir.2009). In consideration of the subjective element, a plaintiff must allege facts which, if true, would establish that the defendant's actions were wanton " 'in light of the particular circumstances surrounding the challenged conduct.' " *Id.* (quoting *Blyden v. Mancusi,* 186 F.3d 252, 262 [2d Cir.1999] ). The objective component asks whether the punishment was sufficiently harmful to establish a violation "in light of 'contemporary standards of decency.' " *Wright,* 554 F.3d at 268 (quoting *Hudson v. McMillian,* 503 U.S. 1, 8 [1992] ).

Generally, officers have a duty to intervene and prevent such cruel and unusual punishment from occurring or continuing. *Curley v. Village of Suffern,* 268 F.3d 65, 72 (2d Cir.2001); *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir.1994). "It is well-established that a law enforcement official has an affirmative duty to intervene

on behalf of an individual whose constitutional rights are being violated in his presence by other officers." *Cicio v. Lamora,* 08–CV–0431, 2010 WL 1063875, at \*8 (N.D.N.Y. Feb.24, 2010) (Peebles, M.J.). A corrections officer who does not participate in, but is present when an assault on an inmate occurs may still be liable for any resulting constitutional deprivation. *Id.* at \*8. To establish a claim of failure-to-intervene, the plaintiff must adduce evidence establishing that the officer had (1) a realistic opportunity to intervene and prevent the harm, (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated, and (3) that officer does not take reasonable steps to intervene. *Jean–Laurent v. Wilkinson,* 540 F.Supp.2d 501, 512 (S.D.N.Y.2008). Generally, officers cannot be held liable for failure to intervene in incidents that happen in a "matter of seconds." *Parker v. Fogg,* 85–CV–177, 1994 WL 49696 at \*8 (N.D.N.Y. Feb.17, 1994) (McCurn, J.).

## 3. Fourteenth Amendment Substantive Due Process Claims

**\*5** The Due Process Clause of the Fourteenth Amendment contains both a substantive component and a procedural component. *Zinernon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). The substantive component "bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Zinernon,* 494 U.S. at 125 [internal quotations marks omitted]. The procedural component bars "the deprivation by state action of a constitutionally protected interest in life, liberty, or property ... *without due process of law." Id.* at 125–126 [internal quotations marks and citations omitted; emphasis in original]. One of the differences between the two claims is that a substantive due process violation "is complete when the wrongful action is taken," while a procedural due process violation "is not complete unless and until the State fails to provide due process" (which may occur *after* the wrongful action in question). *Id.*

"Substantive due process protects individuals against government action that is arbitrary, ... conscience-shocking, ... or oppressive in a constitutional sense, ... but not against constitutional action that is incorrect or ill-advised." *Lowrance v. Achtyl,* 20 F.3d 529, 537 (2d Cir.1994) [internal quotations marks and citations omitted], *aff'g,* 91–CV–1196, Memorandum–Decision and

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 5975027 (N.D.N.Y.)

(Cite as: 2011 WL 5975027 (N.D.N.Y.))

Order (N.D.N.Y. filed Jan. 26, 1993) (DiBianco, M.J.) (granting summary judgment to defendants in inmate's civil rights action).

"An inmate has a liberty interest in remaining free from a confinement or restraint where (1) the state has granted its inmates, by regulation or statute, an interest in remaining free from that particular confinement or restraint; and (2) the confinement or restraint imposes 'an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *Whitaker v. Super,* 08–CV–0449, 2009 WL 5033939, at *5 (N.D.N.Y. Dec.14, 2009) (Kahn, J. adopting Report–Recommendation by Lowe, M.J.) (quoting *Sandin v. Conner,* 515 U.S. 472, 484 [1995] ). Regarding the first prong of this test, "[i]t is undisputed ... that New York state law creates a liberty interest in not being confined to the SHU." *Palmer v. Richards,* 364 F.3d 60, 64 n. 2 (2d Cir.2004). When evaluating whether an inmate's confinement in SHU violates his substantive due process rights, the issue, then, is whether his keeplock confinement imposed "an atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Id.* at 64.

"In the Second Circuit, determining whether a disciplinary confinement constituted an 'atypical and significant hardship' requires examining 'the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and the duration of the disciplinary segregation compared to discretionary confinement.' " *Whitaker,* 2009 WL 5033939, at *5 (quoting *Palmer,* 364 F.3d at 64). "Where a prisoner has served less than 101 days in disciplinary segregation, the confinement constitutes an 'atypical and significant hardship' only if 'the conditions were more severe than the normal SHU conditions.' " *Id.* (quoting *Palmer,* 364 F.3d at 65).[FN5]

FN5. Generally, " '[n]ormal' SHU conditions include being kept in solitary confinement for 23 hours per day, provided one hour of exercise in the prison yard per day, and permitted two showers per week." *Whitaker,* 2009 WL 5033939, at *5 n. 27 (citing *Ortiz v. McBride,* 380 F.3d 649, 655 [2d Cir.2004] ).

## 4. Qualified Immunity Defenses

**\*6** The qualified immunity defense is available to only those government officials performing discretionary functions, as opposed to ministerial functions. *Kaminsky v. Rosenblum,* 929 F.2d 922, 925 (2d Cir.1991). "Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless defendant's alleged conduct, when committed, violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Williams v. Smith,* 781 F.2d 319, 322 (2d Cir.1986) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 815 [1982] ). As a result, a qualified immunity inquiry in a civil rights case generally involves two issues: (1) "whether the facts, viewed in the light most favorable to the plaintiff establish a constitutional violation"; and (2) "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Sira v. Morton,* 380 F.3d 57, 68–69 (2d Cir.2004), *accord, Higazy v. Templeton,* 505 F.3d 161, 169, n. 8 (2d Cir.2007).

In determining the second issue (i.e., whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted), courts in this circuit consider three factors:

(1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991), *cert. denied,* 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992).[FN6] "As the third part of the test provides, even where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful." *Higazy v. Templeton,* 505 F.3d 161, 169–70 (2d Cir.2007).[FN7] This "objective reasonableness" part of the test is met if "officers of reasonable competence could disagree on [the legality of defendant's actions]." *Malley*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

*v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).[FN8] As the Supreme Court has explained,

> FN6. *See also Pena v. DePrisco,* 432 F.3d 98, 115 (2d Cir.2005); *Clue v. Johnson,* 179 F.3d 57, 61 (2d Cir.1999); *McEvoy v. Spencer,* 124 F.3d 92, 97 (2d Cir.1997); *Shechter v. Comptroller of City of New York,* 79 F.3d 265, 271 (2d Cir.1996); *Rodriguez v. Phillips,* 66 F.3d 470, 476 (2d Cir.1995); *Prue v. City of Syracuse,* 26 F.3d 14, 17–18 (2d Cir.1994); *Calhoun v. New York State Div. of Parole,* 999 F.2d 647, 654 (2d Cir.1993).

> FN7. *See also Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective reasonableness of the action.' "); *Davis v. Scherer,* 468 U.S. 183, 190, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984) ("Even defendants who violate [clearly established] constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard."); *Benitez v. Wolff,* 985 F.2d 662, 666 (2d Cir.1993) (qualified immunity protects defendants "even where the rights were clearly established, if it was objectively reasonable for defendants to believe that their acts did not violate those rights").

> FN8. *See also Malsh v. Corr. Officer Austin,* 901 F.Supp. 757, 764 (S.D.N.Y.1995) [citing cases]; *Ramirez v. Holmes,* 921 F.Supp. 204, 211 (S.D.N.Y.1996).

[T]he qualified immunity defense ... provides ample protection to all but the plainly incompetent or those who knowingly violate the law.... Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity

should be recognized.

> *Malley,* 475 U.S. at 341.[FN9]

> FN9. *See also Hunter v. Bryant,* 502 U.S. 224, 299, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) ("The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.") [internal quotation marks omitted].

## III. ANALYSIS

### A. Plaintiff's Retaliation Claim Under the First Amendment

As stated above in Part I.C. of this Decision and Order, Defendants seek the dismissal of this claim because Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that he (1) engaged in protected activity, or (2) suffered adverse action as a result of engaging in protected activity. More specifically, Defendants argue that the claim should be dismissed because (1) the statement of an inmate's intent to contact an attorney is not protected conduct, (2) Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that Defendant Norton knew of Plaintiff's intention to contact an attorney, and (3) Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that Defendants' actions were retaliatory. (Dkt. No. 24, Attach.10.) [FN10]

> FN10. Defendants also argue that Plaintiff's First Amendment claim should be dismissed to the extent that it is based solely on the fact that misbehavior reports against him were *false* (as opposed to being false *and retaliatory* ). The Court agrees that Plaintiff has no general constitutional right to be free from false misbehavior reports. *See Boddie v. Schneider,* 105 F.3d 857, 862 (2d Cir.1997). As a result, to the extent that the Plaintiff's Complaint may be construed as asserting a claim based solely on the issuance of false behavior reports, that claim is dismissed.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 5975027 (N.D.N.Y.)

(Cite as: 2011 WL 5975027 (N.D.N.Y.))

**\*7** After carefully considering the admissible record evidence adduced in this case, and carefully reviewing the relevant case law, the Court has trouble finding that an inmate's one-time making of an oral statement (immediately after the use of force against him) that he would be "contacting [his] attorney," or "calling a lawyer" at some unidentified point in the future constitutes engagement in activity that is protected by the First Amendment—especially where, as here, the inmate did not reference the prison grievance process in his statement.

Representation by a lawyer is certainly not necessary to file an inmate grievance in the New York State Department of Corrections and Community Supervision, nor does such representation necessarily result in the filing of a grievance. Rather, such representation is most typically associated with the filing of a civil rights action in federal court (as is clear from the motions for appointment of counsel typically filed in federal court actions). As a result, the statement in question does not reasonably imply that Plaintiff would be filing a grievance as much as it implies that he was going to consult an attorney as to whether or not to file a civil rights action in federal court.

Here, such a statement is problematic. This is because, generally, the filing of the prisoner civil rights action in federal court in New York State must be preceded by the prisoner's exhaustion of his available administrative remedies (or his acquisition of a valid excuse for failing to exhaust those remedies). Any filing without such prior exhaustion (or acquisition of a valid excuse), under the circumstances, would be so wholly without merit as to be frivolous. Of course, filing a court action that is frivolous is not constitutionally protected activity.[FN11]

> **FN11.** *See Wade–Bey v. Fluery,* 07–CV–117, 2008 WL 2714450 at \*6 (W.D.Mich. July 8, 2010) ("Although it is well established that prisoners have a constitutional right of access to the courts ..., the filing of a frivolous lawsuit would not be protected activity.") [citation omitted].

Moreover, to the extent that Plaintiff's statement could be construed as reasonably implying that he was going to consult an attorney as to whether or not to file a grievance, the Court has trouble finding that such a vague statement is constitutionally protected.[FN12] As one district court has stated, "[h]oping to engage in constitutionally protected activity is not itself constitutionally protected activity."[FN13] The Court notes that a contrary rule would enable a prisoner who has committed conduct giving rise to a misbehavior report to create a genuine issue of material fact (and thus reach a jury) on a retaliation claim (alleging adverse action based on the issuance of that misbehavior report) simply by uttering the words, "I'm calling a lawyer," after he commits the conduct in question but before the misbehavior report is issued.

> **FN12.** The Court notes that numerous cases exist for the point of law that even *expressly threatening* to file a *grievance* does not constitutes protected activity. *See, e.g., Bridges v. Gilbert,* 557 F.3d 541, 554–55 (7th Cir.2009) ("[I]t seems implausible that a *threat* to file a grievance would itself constitute a First Amendment-protected grievance.") [emphasis in original]; *Brown v. Darnold,* 09–CV–0240, 2011 WL 4336724, at \*4 (S.D.Ill. Sept.14, 2011) ("Plaintiff cannot establish that his threat to file a grievance against Defendant Darnold is a constitutionally protected activity."); *Koster v. Jelinek,* 10–CV–3003, 2011 WL 3349831, at \*3, n. 2 (C.D.Ill. Aug.3, 2011) ("The plaintiff does not seem to be asserting that he had a First Amendment right to threaten the facilitators with lawsuits and grievances, nor does the Court believe that he has such a right."); *Ingram v. SCI Camp Hill,* 08–CV–0023, 2010 WL 4973302, at \*15 (M.D.Pa.Dec.1, 2010) ("Stating an intention to file a grievance is not a constitutionally protected activity."), *aff'd,* No. 11–1025, 2011 WL 4907821 (3d Cir. Oct.17, 2011); *Lamon v. Junious,* 09–CV–0484, 2009 WL 3248173, at \*3 (E.D.Cal. Oct.8, 2009) ("A mere threat to file suit does not rise to the level of a protected activity...."); *Miller v. Blanchard,* 04–CV–0235, 2004 WL 1354368, at \*6 (W.D.Wis. June 14, 2004) ("Plaintiff alleges that

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 5975027 (N.D.N.Y.)

(Cite as: 2011 WL 5975027 (N.D.N.Y.))

defendants retaliated against him after he threatened to file a lawsuit against them. Inmates do not have a First Amendment right to make threats.").

FN13. *McKinnie v. Heisz,* 09–CV–0188, 2009 WL 1455489, at *11 (W.D.Wis. May 7, 2009) ("Hoping to engage in constitutionally protected activity is not itself constitutionally protected activity. At most, petitioner's actions could be construed as a 'threat' to assert his rights but that is not enough.").

In any event, even assuming, for the sake of argument, that Plaintiff's statement was constitutionally protected, the Court finds, based on the current record, that Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that his statement to Defendants Dinelle, Duckett, and Broekema that he would be contacting an attorney was a substantial or motivating factor for the issuance of the misbehavior report by Defendant Norton (which was signed by Defendant Dinelle as a witness), and the misbehavior report by Defendant Duckett (which was signed by Defendant DeLuca as a witness). The Court makes this finding for two alternate reasons.

**\*8** First, with regard to the misbehavior report issued by Defendant Norton, Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that she was aware Plaintiff would be contacting an attorney. In addition, with regard to the report made by Defendant Duckett (which was signed by Defendant DeLuca as a witness), although there is record evidence that Defendant Duckett had knowledge of Plaintiff's statement that he would contact an attorney, Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that Defendant Duckett had reason to believe, at the time the misbehavior report was issued, Plaintiff would actually follow through with his one-time oral statement, made on the heals of a heated incident.

Second, even assuming that Defendant Duckett or Defendant Norton had reason to believe Plaintiff would contact an attorney, Plaintiff has failed to adduce

admissible record evidence from which a rational factfinder could conclude that Defendant Duckett or Defendant Norton would not have issued the misbehavior report anyway, based on Plaintiff's actions. Indeed, at Plaintiff's disciplinary hearings, evidence was adduced that he in fact committed most of the misconduct alleged in the misbehavior reports, which resulted in the hearing officer finding multiple violations and sentencing Plaintiff to SHU. FN14 Furthermore, those convictions were never subsequently reversed on administrative appeal. FN15 As a result, no admissible record evidence exists from which a rational factfinder could conclude that Plaintiff has established the third element of a retaliation claim—the existence of a causal connection between the protected speech and the adverse action.

FN14. *See Hynes v. Squillance,* 143 F.3d 653, 657 (2d Cir.1998) (holding that defendants met their burden of showing that they would have taken disciplinary action on valid basis alone where the evidence demonstrated that plaintiff had committed "the most serious, if not all, of the prohibited conduct"); *Jermosen v. Coughlin,* 86–CV–0208, 2002 WL 73804, at *2 (N.D.N.Y. Jan.11, 2002) (Munson, J.) (concluding, as a matter of law, that defendants showed by a preponderance of the evidence that they would have issued a misbehavior report against plaintiff even in the absence of his complaints against correctional department personnel, because they established that the misbehavior report resulted in a disciplinary conviction, "demonstrat[ing] that plaintiff in fact committed the prohibited conduct charged in the misbehavior report.").

FN15. For these reasons, the Court finds to be inapposite the case that Plaintiff cites for the proposition that the Court must accept as true his sworn denial that he committed any of the violations alleged in the misbehavior reports issued against him. *See Samuels v. Mockry,* 142 F.3d 134, 135–36 (2d Cir.1998) (addressing a situation in which a prisoner was placed in a prison's "Limited Privileges Program," upon a finding rendered by the prison's Program Committee, that he had refused to accept a

Slip Copy, 2011 WL 5975027 (N.D.N.Y.)

(Cite as: 2011 WL 5975027 (N.D.N.Y.))

mandatory work assignment, *"without a hearing or a misbehavior report"* ) [emphasis added]. The Court would add only that, even if it were to accept Plaintiff's sworn denial as true, the Court would still find that he has failed to establish that Defendants Duckett and Norton would not have issued the misbehavior reports against him anyway, based on their subjective belief that he was acting in a disturbing, interfering, harassing and disobedient manner at the time in question (as evident from, *inter alia,* their misbehavior reports, the disciplinary hearing testimony of three of the Defendants, and admissions made by Plaintiff during his deposition regarding the "confusion" and "misunderstanding" that occurred during his examination by Defendant Norton, his persistent assertions about his prescribed frequency of visits, and his unsolicited comments about his proper course of treatment).

For each of these alternative reasons, Plaintiff's retaliation claim under the First Amendment is dismissed.

### B. Plaintiff's Claims Under the Eighth Amendment

As stated above in Part I.C. of this Decision and Order, Defendants seek the dismissal of Plaintiff's Eighth Amendment claims because (1) Plaintiff has failed to adduce any admissible evidence from which a rational factfinder could conclude that Defendant Norton used any force against Plaintiff, or was in a position to intervene to prevent the use of force against Plaintiff, yet failed to do so, (2) Plaintiff has failed to adduce any admissible evidence from which a rational factfinder could conclude that Defendant Broekema had a reasonable opportunity to intervene and prevent the alleged assault by Defendants Dinelle, DeLuca and Duckett, yet failed to do so, and (3) Plaintiff's identification of Defendant DeLuca is "very tentative."

As an initial matter, because Plaintiff did not oppose Defendants' argument that his excessive-force claim against Defendant Norton should be dismissed, Defendants' burden with regard to this claim "is lightened such that, in order to succeed, they need only show the facial merit of their request, which has appropriately been characterized as a 'modest' burden." *Xu–Shen Zhou v.*

*S.U.N.Y. Inst. of Tech.,* 08–CV–0444, 2011 WL 4344025, at *11 (N.D.N.Y. Sept.14, 2011)* (Suddaby, J.). After carefully considering the matter, the Court finds that Defendants have met this modest burden, for the reasons stated by them in their memoranda of law. The Court would add only that, based on its own independent review of the record, the Court can find no record evidence to support the claim that Defendant Norton used force against Plaintiff, or was in a position to intervene to prevent the use of force against Plaintiff, yet failed to do so. As a result, Plaintiff's Eighth Amendment claim against Defendant Norton is dismissed.

**\*9** Turning to Plaintiff's failure-to-intervene claim against Defendant Broekema, it is undisputed that it was Defendants Duckett, Dinelle and DeLuca who used force against Plaintiff. Plaintiff testified that, while Defendant Broekema was in the room at the time, Defendant Broekema was standing behind Defendant Dinelle on his "immediate right." In addition, Plaintiff testified that Defendant Duckett's threat of physical force against Plaintiff was conditioned on Plaintiff's continued failure to comply with (what Plaintiff perceived to be) conflicting instructions by Defendants Duckett and Dinelle during the frisk. (Dkt. No. 24, Attach. 4, at 97–99.) Furthermore, Plaintiff testified that it was only after he failed to put his hands in his pockets (rather soon after being warned by Defendant Duckett) that either Defendant Duckett or Defendant Dinelle punched him *one time* with a "closed fist" in the side of his nose, causing him to immediately fall to the ground. (*Id.* at 98–99.) Finally, Plaintiff testified that the kicks that he suffered soon after falling to the ground were limited in nature, having occurred only "a couple of times," and indeed having only *possibly* occurred. (*Id.* at 99.)

While the Court in no way condones the conduct alleged in this action, the Court is simply unable to find, based on the current record, that Plaintiff has adduced sufficient admissible record evidence to reach a jury on his Eighth Amendment claim against Defendant Broekema. Rather, based on the evidence presented, a rational factfinder could only conclude that the use of force was simply too uncertain for a reasonable person in Defendant Broekema's position to expect; and it was too brief in nature to give Defendant Broekema a realistic opportunity

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 5975027 (N.D.N.Y.)

(Cite as: 2011 WL 5975027 (N.D.N.Y.))

to intervene in it, so as prevent the one punch and possibly few kicks that Plaintiff presumably experienced.[FN16]

> FN16. *See* *O'Neill v. Krzeminski,* 839 F.2d 9, 11–12 (2d Cir.1988) (noting that "three blows [that occurred] in such rapid succession ... [is] not an episode of sufficient duration to support a conclusion that an officer who stood by without trying to assist the victim became a tacit collaborator"); *Blake v. Base,* 90–CV–0008, 1998 WL 642621, at *13 (N.D.N.Y. Sept.14, 1998) (McCurn, J.) (dismissing failure-to-intervene claim against police officer based on finding that the punch to the face and few body blows that plaintiff allegedly suffered "transpired so quickly ... that even if defendant ... should have intervened, he simply did not have enough time to prevent plaintiff from being struck"); *Parker v. Fogg,* 85–CV–0177, 1994 WL 49696, at *8 (N.D.N.Y. Feb.17, 1994) (McCurn, J.) (holding that an officer is not liable for failure-to-intervene if there "was no 'realistic opportunity' to prevent [an] attack [that ends] in a matter of seconds"); *see also* *Murray–Ruhl v. Passinault,* 246 F. App'x 338, 347 (6th Cir.2007) (holding that there was no reasonable opportunity for an officer to intervene when one officer stood by while another fired twelve shots in rapid succession); *Ontha v. Rutherford Cnty., Tennessee,* 222 F. App'x 498, 506 (6th Cir.2007) ("[C]ourts have been unwilling to impose a duty to intervene where ... an entire incident unfolds 'in a matter of seconds.' "); *Miller v. Smith,* 220 F.3d 491, 295 (7th Cir.2000) (noting that a prisoner may only recover for a correction's officer's failure to intervene when that officer "ignored a realistic opportunity to intervene").

Finally, based on the current record, the Court rejects Defendants' third argument (i.e., that Plaintiff's excessive-force claim against Defendant DeLuca should be dismissed because Plaintiff's identification of Defendant DeLuca is "very tentative"). Defendants argue that Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that Defendant DeLuca was present during the use of force

against Plaintiff (let alone that Defendant DeLuca used force against Plaintiff). This is because Plaintiff's basis for bringing his excessive-force claim against Defendant DeLuca is that he remembered being assaulted by three individuals, including Defendants Dinelle and Duckett, whose last names began with the letter "D." While this fact is undisputed, it is also undisputed that Defendant DeLuca was interviewed by the Inspector General's Office regarding his involvement in the incidents giving rise to Plaintiff's claims,[FN17] and that both Defendant Broekema's use-of-force report, and Defendant Broekema's Facility Memorandum, state that Defendant DeLuca participated in the use of force against Plaintiff.[FN18] Based on this evidence, a rational factfinder could conclude that Defendant DeLuca violated Plaintiff's Eighth Amendment rights. As a result, Plaintiff's Eighth Amendment excessive-force claim against Defendant DeLuca survives Defendants' motion for summary judgment. The Court would add only that, although it does not construe Plaintiff's Complaint as alleging that Defendant DeLuca failed to intervene in the use of force against Plaintiff, assuming, (based on Plaintiff's motion papers) that Plaintiff has sufficiently alleged this claim, the claim is dismissed because the entirety of the record evidence as it pertains to Defendant DeLuca establishes that he used force against Plaintiff.

> FN17. (Dkt. No. 27, Attach. 2, at 19–20.)

> FN18. (Dkt. No. 27, Attach. 2, at 10, 14.)

**C. Plaintiff's Claim Under the Fourteenth Amendment**

**\*10** As stated above in Part I.C. of this Decision and Order, Defendants seek the dismissal of this claim because Defendants did not deprive Plaintiff of his liberty rights. As stated above in note 2 of this Decision and Order, Plaintiff failed to address Defendants' argument that his substantive due process claim should be dismissed. As a result, as stated above in Part III.B. of this Decision and Order, Defendants' burden with regard to this claim "is lightened such that, in order to succeed, they need only show the facial merit of their request, which has appropriately been characterized as a 'modest' burden." *Xu–Shen Zhou,* 2011 WL 4344025, at *11.

After carefully considering the matter, the Court finds

that Defendants have met this modest burden, for the reasons stated by them in their memoranda of law. The Court would add only that, based on its own independent review of the record, although the record evidence establishes that Plaintiff was confined in SHU for 150 days as a result of the misbehavior reports issued by Defendants Norton and Duckett, Plaintiff has failed to adduced admissible record evidence from which a rational factfinder could conclude that the conditions of his confinement during this 150–day period were more severe than normal SHU conditions.[FN19] As a result, Plaintiff's substantive due process claim is dismissed.

> FN19. *See* *Spence v. Senkowski,* 91–CV–0955, 1998 WL 214719, at *3 (N.D.N.Y. Apr.17, 1998) (McCurn, J.) (finding that 180 days that plaintiff spent in SHU, where he was subjected to numerous conditions of confinement that were more restrictive than those in general population, did not constitute atypical and significant hardship in relation to ordinary incidents of prison life); *accord, Husbands v. McClellan,* 990 F.Supp. 214, 217–19 (W.D.N.Y.1998) (180 days in SHU under numerous conditions of confinement that were more restrictive than those in general population); *Warren v. Irvin,* 985 F.Supp. 350, 353–56 (W.D.N.Y.1997) (161 days in SHU under numerous conditions of confinement that were more restrictive than those in general population); *Ruiz v. Selsky,* 96–CV–2003, 1997 WL 137448, at *4–6 (S.D.N.Y.1997) (192 days in SHU under numerous conditions of confinement that were more restrictive than those in general population); *Horne v. Coughlin,* 949 F.Supp. 112, 116–17 (N.D.N.Y.1996) (Smith, M.J.) (180 days in SHU under numerous conditions of confinement that were more restrictive than those in general population); *Nogueras v. Coughlin,* 94–CV–4094, 1996 WL 487951, at *4–5 (S.D.N.Y. Aug.27, 1996) (210 days in SHU under numerous conditions of confinement that were more restrictive than those in general population); *Carter v. Carriero,* 905 F.Supp. 99, 103–04 (W.D.N.Y.1995) (270 days in SHU under numerous conditions of confinement that

were more restrictive than those in general population).

**D. Defendants' Defense of Qualified Immunity**

As stated above in Part I.C. of this Decision and Order, Defendants seek dismissal of Plaintiff's claims on the alternative ground that they are protected from liability, as a matter of law, by the doctrine of qualified immunity, under the circumstances.

**1. Retaliation**

The doctrine of qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Pearson v. Callahan,* 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 [1982] ). Here, even assuming that Plaintiff's statement that he would contact an attorney regarding the use of force he experienced constitutes engagement in protected activity, and even also assuming that the only reason Defendant Norton and/or Duckett issued Plaintiff a misbehavior report was because he made this statement, these Defendants are, under the circumstances, entitled to qualified immunity. This is because the Court finds that the right to make this statement (without experiencing any resulting adverse action) was not a clearly established during the time in question (January 2009), based on a review of the relevant case law. *See, supra,* notes 12 and 13 of this Decision and Order.

As a result, Plaintiff's retaliation claim is dismissed on the alternate ground of qualified immunity.

**2. Excessive Force**

There is no doubt that the right to be free from the use of excessive force was "clearly established" at the time of the incidents giving rise to Plaintiff's claims. *See, e.g., Hudson v. McMillian,* 503 U.S. 1, 9–10, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). Moreover, with regard to whether it was objectively reasonable for Defendants to use the alleged amount of force that they used, the Second Circuit has made clear that, "[w]here the circumstances are in dispute, and contrasting accounts present factual issues as to the degree of force actually employed and its

Slip Copy, 2011 WL 5975027 (N.D.N.Y.)

(Cite as: 2011 WL 5975027 (N.D.N.Y.))

reasonableness, a defendant is not entitled to judgment as a matter of law on a defense of qualified immunity." *Mickle v. Morin,* 297 F.3d 114, 122 (2d Cir.2002) [internal quotation marks omitted].

**\*11** Here, after carefully reviewing the record, and construing it in the light most favorable to Plaintiff, the Court finds that, even if Defendants Dinelle, DeLuca and Duckett genuinely feared being assaulted by Plaintiff, and even if those three Defendants genuinely perceived Plaintiff's words and movements to constitute an attempt to resist a frisk, admissible record evidence exists from which a rational jury could conclude that those perceptions were not objectively reasonable under the circumstances. As the Second Circuit has observed, it is impossible to "determine whether [Defendants] reasonably believed that [their] force was not excessive when several material facts [are] still in dispute, [and therefore,] summary judgment on the basis of qualified immunity [is] precluded." *Thomas v. Roach,* 165 F.3d 137, 144 (2d Cir.1999).[FN20] For these reasons, the Court rejects Defendants' argument that Plaintiff's excessive-force claim should be dismissed on the ground of qualified immunity as it relates to Defendants Dinelle, DeLuca and Duckett.

> FN20. *See also Robison v. Via,* 821 F.2d 913, 924 (2d Cir.1987) ( "[T]he parties have provided conflicting accounts as to [who] initiated the use of force, how much force was used by each, and whether [the arrestee] was reaching toward [a weapon]. Resolution of credibility conflicts and the choice between these conflicting versions are matters for the jury and [should not be] decided by the district court on summary judgment.").

However, the Court reaches a different conclusion with regard to Plaintiff's failure-to-intervene claim against Defendant Broekema: the Court finds that, at the very least, officers of reasonable competence could disagree on the legality of Defendant Broekema's actions, based on the current record. As a result, Plaintiff's failure-to-intervene claim against Defendant Broekema is dismissed on this alternative ground.

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion for partial

summary judgment (Dkt. No. 24) is ***GRANTED*** in part and ***DENIED*** in part in the following respects:

(1) Defendants' motion for summary judgment on Plaintiff's First Amendment claim is ***GRANTED;***

(2) Defendants' motion for summary judgment on Plaintiff's Fourteenth Amendment substantive due process claim is ***GRANTED;***

(3) Defendants' motion for summary judgment on Plaintiff's Eighth Amendment excessive-force claim against Defendant Norton is ***GRANTED;***

(4) Defendants' motion for summary judgment on Plaintiff's Eighth Amendment failure-to-intervene claim against Defendant Broekema is ***GRANTED;*** and

(5) Defendants' motion for summary judgment on Plaintiff's Eighth Amendment excessive-force claim against Defendant DeLuca is ***DENIED;*** and it is further

**ORDERED** that the following claims are ***DISMISSED*** with prejudice from this action:

(1) Plaintiff's First Amendment claim;

(2) Plaintiff's Fourteenth Amendment substantive due process claim;

(3) Plaintiff's Eighth Amendment excessive-force claim against Defendant Norton; and

(4) Plaintiff's Eighth Amendment failure-to-intervene claim against Defendant Broekema; and it is further

**ORDERED** that Defendants Norton and Broekema are ***DISMISSED*** from this action; and it is further

**ORDERED** that, following this Decision and Order, the following claims remain pending in this action: Plaintiff's Eighth Amendment excessive-force claim against Defendants DeLuca, Dinnelle and Duckett; and it is further

**\*12 ORDERED** that counsel are directed to appear

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 5975027 (N.D.N.Y.)

(Cite as: 2011 WL 5975027 (N.D.N.Y.))

on **JANUARY 4, 2012 at 2:00 p.m.** in chambers in Syracuse, N.Y. for a pretrial conference, at which counsel are directed to appear with settlement authority, and in the event that the case does not settle, trial will be scheduled at that time. Plaintiff is further directed to forward a written settlement demand to defendants no later than **DECEMBER 16, 2011,** and the parties are directed to engage in meaningful settlement negotiations prior to the 1/4/12 conference.

N.D.N.Y.,2011.

Henry v. Dinelle
Slip Copy, 2011 WL 5975027 (N.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.


Slip Copy, 2013 WL 1846488 (C.A.2 (N.Y.))
(Table, Text in WESTLAW), Unpublished Disposition

(Cite as: 2013 WL 1846488 (C.A.2 (N.Y.)))

Only the Westlaw citation is currently available.This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter.

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE(WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

United States Court of Appeals,

Second Circuit.

Sitthisak V. CHANSAMONE, Plaintiff–Appellant,
v.
IBEW LOCAL 97, Defendant,
NRG Northeast Aff Service, Inc., Defendant–Appellee.
No. 12–1976–cv.

May 3, 2013.

Appeal from the United States District Court for the Western District of New York (Curtin, J.).

Gregory G. Paul, Morgan & Paul, PLLC, Sewickley, PA, for Plaintiff–Appellant.

Mark A. Molloy, Nixon Peabody LLP, Buffalo, NY, for Appellee.

Present PIERRE N. LEVAL, ROBERT A. KATZMANN and PETER W. HALL, Circuit Judges.

**SUMMARY ORDER**

**\*1 ON CONSIDERATION WHEREOF,** it is hereby **ORDERED, ADJUDGED,** and **DECREED** that the judgment of the district court be and hereby is **AFFIRMED.**

Plaintiff–Appellant Sitthisak Chansamone appeals from a judgment entered on April 13, 2012 by the United States District Court for the Western District of New York (Curtin, J.). That judgment granted the motion of Defendant–Appellee NRG Northeast Aff Service, Inc. ("NRG") for summary judgment and dismissed Chansamone's claims for employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and the New York State Human Rights Law, N.Y. Exec. Law §§ 290 et seq.FN1 On appeal, Chansamone contends that the evidence in the record supports his claims that NRG discriminated against him in its hiring process and that it tolerated a racially hostile work environment. We assume the parties' familiarity with the relevant facts, the procedural history, and the issues presented for review.

> FN1. Although Chansamone initially identified IBEW Local 97 as a defendant, he voluntarily dismissed his claims against it with prejudice on April 26, 2011.

We turn first to Chansamone's claim that NRG discriminated against him when it declined to hire him for permanent positions at a facility other than the one where he worked as a temporary employee.FN2 To prevail on this claim, Chansamone must first establish a prima facie case by showing: "(1) that [he] was within the protected ... group, (2) that [he] was qualified for the position, (3) that [he] experienced [an] adverse employment action, and (4) that such [an] action occurred under circumstances giving rise to an inference of discrimination." Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 107 (2d Cir.2010). If Chansamone establishes a prima facie case, "the burden shifts to the defendant to articulate 'some legitimate, nondiscriminatory reason' for its action." Id. at 106

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 1846488 (C.A.2 (N.Y.))
(Table, Text in WESTLAW), Unpublished Disposition

(Cite as: 2013 WL 1846488 (C.A.2 (N.Y.)))

(quoting *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973)). "Once such a reason is provided, the plaintiff can no longer rely on the prima facie case, but may still prevail if [he] can show that the employer's determination was in fact the result of discrimination." *Id.*[FN3]

> FN2. Because NRG classified Chansamone as a "temporary employee," his selection for a permanent position at the other facility would have amounted to a promotion.

> FN3. The same standards apply to Chansamone's state claims. *See, e.g., Tyler v. Bethlehem Steel Corp.,* 958 F.2d 1176, 1180 (2d Cir.1992).

Here, even if Chansamone can establish a prima facie case, he has offered no evidence to rebut NRG's "legitimate, nondiscriminatory reason" for its actions. Chansamone, who is Laotian, applied on numerous occasions for permanent positions at a NRG facility other than the one where he worked as a temporary employee. He claims that Carson Leikam, the hiring supervisor at that separate facility, declined to employ him based on his race. According to Chansamone, Leikam knew about his race because Leikam heard Chansamone's accent when Chansamone called to inquire about his application. Leikam, however, explained his decision not to choose Chansamone based on legitimate and nondiscriminatory factors: specifically, that Chansamone struck him as "abrupt[ ]" during the relevant phone call, that Chansamone had potentially shown a lack of commitment when he "left the company and ... came back," and that Chansamone's resume overstated his experience. In response to these nondiscriminatory reasons, Chansamone argues only that successful applicants also called Leikam and that Leikam failed to investigate Chansamone's qualifications.[FN4] No reasonable jury could find, based on these arguments, that NRG in fact discriminated against Chansamone. First, Leikam identified Chansamone's abruptness during the phone call, rather than the mere fact that Chansamone called, as the basis for disfavoring Chansamone's application. Second, the fact that Leikam did not investigate Chansamone's qualifications says nothing about why he did not do so and is wholly consistent with Leikam's explanation that he stopped

considering Chansamone's application because the phone call and resume left him with an unfavorable impression. Accordingly, Chansamone has produced no credible evidence of discrimination, and the district court correctly granted summary judgment on these claims.

> FN4. We do not consider Chansamone's testimony that co-workers told him that Leikam would not hire him "as an Asian," because that testimony is inadmissible hearsay. *See Burlington Coat Factory Warehouse Corp. v. Esprit De Corp,* 769 F.2d 919, 924 (2d Cir.1985) ("[A party] cannot rely on inadmissible hearsay in opposing a motion for summary judgment."); *see also Woodman v. WWOR–TV, Inc.,* 411 F.3d 69, 75 (2d Cir.2005) ("[W]e are obliged carefully [to] distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture." (internal quotation marks omitted)).

**\*2** Chansamone's hostile work environment claim likewise fails. To prevail on this claim, Chansamone must make two showings. First, he must demonstrate that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993) (citations and internal quotation marks omitted). Second, he must identify a "specific basis ... for imputing the conduct that created the hostile environment to the employer." *Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir.1997). In our prior cases, we have allowed hostile environment claims to proceed only where a plaintiff has shown either one or more "extraordinarily severe" incidents, *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 570 (2d Cir.2000), or "a steady barrage of opprobrious racial comments," *Schwapp,* 118 F.3d at 110 (internal quotation marks omitted).

Here, Chansamone cannot show that the conduct of his co-workers, although undoubtedly offensive, was so severe or frequent that it created "an abusive working environment." Although Chansamone testified that another

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 1846488 (C.A.2 (N.Y.))
(Table, Text in WESTLAW), Unpublished Disposition

(Cite as: 2013 WL 1846488 (C.A.2 (N.Y.)))

co-worker called him a "VC" and said, "I used to kill people like [Chansamone]," these remarks do not rise to the level of an "extraordinarily severe" incident. *Compare Richardson v. N.Y. State Dep't of Correctional Serv., 180 F.3d 426, 439 (2d Cir.1999)* ("Perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as nigger by a supervisor in the presence of his subordinates." (internal quotation marks omitted)), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53 (2006), *with Whidbee v. Garzarelli Food Specialties, 223 F.3d 62, 70–71 (2d Cir.2000)* (analyzing co-worker's statement that "he had a rope with which to hang" someone as only *part* of a "stream of racially offensive comments"). Moreover, analyzing the aforementioned comments alongside the other conduct that Chansamone has identified,[FN5] we think that the evidence demonstrates only "sporadic" or "isolated incidents of racial enmity," rather than "a steady barrage of opprobrious racial comments." *Schwapp,* 118 F.3d at 110 (internal quotation marks omitted). Accordingly, the district court correctly granted NRG's motion for summary judgment.[FN6]

> **FN5.** Specifically, Chansamone testified that a different co-worker referred to his friend as an "Asian gay lover," and that multiple co-workers told him that Leikam would not hire him because of his race.

> **FN6.** Chansamone further argues that the district court erred by failing to rule on his motion to compel responses to his interrogatories. Nonetheless, NRG voluntarily produced responses to Chansamone's discovery demands, mooting any motion to compel.

We have considered Chansamone's remaining arguments and find them to be without merit. For the reasons stated herein, the judgment of the district court is **AFFIRMED.**

C.A.2 (N.Y.),2013.

Chansamone v. IBEW Local 97
Slip Copy, 2013 WL 1846488 (C.A.2 (N.Y.))

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp., 1995 WL 232736 (S.D.N.Y.)
(Cite as: 1995 WL 232736 (S.D.N.Y.))

**C**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.

GREENWALDT, Plaintiff,
v.
COUGHLIN, et al., Defendants.
**93 Civ. 6551 (LAP).**

April 19, 1995.

*MEMORANDUM AND ORDER*

PRESKA, District Judge:

**\*1** Plaintiff Paul P. Greenwaldt ("Greenwaldt") brings this prisoner pro se suit under 42 U.S.C. § 1983, claiming that the defendants, employees of the New York State Department of Correctional Services ("NYSDOCS"), violated his constitutional rights. Defendants Thomas A. Coughlin, III ("Coughlin"), Commissioner of NYSDOCS; Anthony J. Annucci ("Annucci"), Deputy Commissioner and Counsel; Susan E. Butler ("Butler"), Deputy Commissioner; Philip Coombe, Jr. ("Coombe"), First Deputy Commissioner; James Recore ("Recore"), Director of the Bureau of Temporary Release and Robert Hanslmaier ("Hanslmaier"), Acting Superintendent of Woodbourne Correctional Facility ("Woodbourne"), have moved to dismiss. Defendant T. J. Miller ("Miller"), Deputy Superintendent of Woodbourne, has not joined in the motion to dismiss. For the reasons given below, the motion is granted.

*BACKGROUND*

Greenwaldt makes numerous allegations against the defendants. On May 21, 1993, Greenwaldt was transferred to Woodbourne, a medium security facility under the jurisdiction of NYSDOCS. (Am. Compl. ¶¶ 1-2.)[FN1] Upon his arrival at Woodbourne, a sergeant allegedly informed Greenwaldt that at Woodbourne visits were permitted only on alternate Saturdays and Sundays, depending on the first letter of the inmate's last name.[FN2] Greenwaldt asked if there were any exceptions possible, and the sergeant told him to write the Deputy Superintendent to request an exception. (Am. Compl. ¶¶ 3-6.) Greenwaldt, an avid letter writer, proceeded to write to various state public officials concerning what he perceived to be discriminatory visitation rules. (Am. Com pl. ¶¶ 8-11.)

Greenwaldt also complains that on June 3, 1993, he was placed in keeplock without a good reason. (Am. Compl. ¶¶ 15-16.) Greenwaldt claims that, at about that time, he was fined five dollars, without explanation or notice. (Am. Compl. ¶ 20.) On June 5, 1993, Greenwaldt claims to have received notice that he had been found guilty of "refusing a direct order...; interfering with an officer; and, [sic] creating a disturbance." (Am. Compl. ¶ 22.) Greenwaldt then wrote to defendants Coughlin, Coombe, Annucci, and Hanslmaier complaining of perceived procedural violations in connection with his disciplinary proceeding. (Am. Compl. ¶¶ 23-25.) On June 8, 1993, Greenwaldt attended a Tier II disciplinary hearing and was found "not guilty of one charge, and guilty of the other charges." (Am. Compl. ¶¶ 26-28.) Greenwaldt appealed this finding. (Am. Compl. ¶ 30.) He also persisted in his complaints regarding the five dollar fine. (Am. Compl. ¶ 33.)

Greenwaldt also claims that a Sargeant Keesler ("Keesler") threatened him. Greenwaldt alleges Keesler told him, "if you continue to complain, I will personally have my officers write you up for every little thing and it will cost you much more than the five dollars ($5.00) we already got." (Am. Compl. ¶ 34.) Greenwaldt claims he immediately wrote to Coughlin, Coombe and Hanslmaier informing them of Keesler's threats. Hanslmaier responded to Greenwaldt in a letter which, according to Greenwaldt "totally disregarded the written complaint." (Am. Compl. ¶ 36.)

**\*2** Greenwaldt also claims that Recore denied his appeal

Not Reported in F.Supp., 1995 WL 232736 (S.D.N.Y.)
(Cite as: 1995 WL 232736 (S.D.N.Y.))

of the disciplinary hearing judgment. (Am. Compl. ¶¶ 37-41.) Displeased, Greenwaldt wrote to Recore, complaining that he did not receive a copy of the decision and alleging the decision was inaccurate. (Am. Compl. ¶ 42.) Greenwaldt also complained to Recore of alleged violations of New York correctional facility regulations and of allegedly improper administration of the temporary release program. (Am. Com pl. ¶ 44-48.) In fact, Greenwaldt claims Coughlin, Coombe, Butler, Annucci, Recore, and possibly even then-Governor Mario Cuomo, the Attorney General, and members of the New York State Senate and Assembly were together "engaged in an active conspiracy to circumvent and violate the very laws that they swore to uphold" with respect to the administration of the temporary release program. (Am. Compl. ¶ 49.) Greenwaldt also claims he requested Recore to:

take the necessary steps as the DIRECTOR of the TEMPORARY RELEASE PROGRAMS, to rectify the egregious violations of the law and, [sic] the total disregard of the mandates of 7 N.Y.C.C.R. Part 1900 et seq. by the Temporary Release Committees in the various correctional facilities.

(Compl. ¶ 49.)

Greenwaldt alleges that on September 10, 1993, Keesler conducted a search of Greenwaldt's cell and told him that he was "in real trouble because [he] wrote legal papers for other inmates." (Am. Compl. ¶ 52.) Keesler allegedly took legal papers and forms from Greenwaldt's cell. (Am. Compl. at ¶¶ 53-54.) Greenwaldt was served with a Notice of Charges, taken to a Tier III Disciplinary Hearing and "found guilty and sentenced." Though his legal papers were eventually returned to him, he was fined another five dollars. (Am. Compl. ¶¶ 59, 61.)

Greenwaldt alleges that he was subjected to new threats after this incident. According to Greenwaldt, Keesler and Miller "attempted to intimidate [[[Greenwaldt] by questioning [him] about the lawsuit presently pending." (Am. Compl. ¶ 62.) Greenwaldt claims that Keesler then said of Greenwaldt to Miller, in Greenwaldt's presence, "this one... you can lock anytime, he deserves it." (Am. Compl. ¶ 62-63.)

Turning to the procedural background of the instant action, Greenwaldt filed his original complaint on September 16, 1993. Defendants Coughlin, Annucci, Butler and Coombe moved to dismiss on November 18, 1993. On December 13, 1993, Greenwaldt filed his memorandum in opposition. Defendants, including Recore, filed an amended memorandum on January 31, 1994. Greenwaldt filed an amended complaint on March 2, 1994. Defendants filed a second amended memorandum on July 15, 1994, Hanslmaier by then having joined the motion as well.

Greenwaldt brings this suit under 42 U.S.C. § 1983, and alleges violations of his rights under the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments. (Am. Compl. ¶¶ 70-74.) He asks that I enjoin the defendants "from further penalizing [Greenwaldt] for exercising his constitutional rights and from confining him to his cell," (Am. Compl. at 22, ¶ 1), and from implementing what Greenwaldt claims is a discriminatory policy on visiting times. (Am. Compl. at 22, ¶ 2). Greenwaldt also seeks declaratory relief declaring unconstitutional the administration of the temporary release program. Finally, he seeks compensatory damages, punitive damages, and costs. Defendants argue, *inter alia,* that there is no basis for holding defendants liable for the alleged violations, and that Greenwaldt has no protected interest, in either the temporary release program or the visitation policy, upon which to base his claims. Defendants' motion to dismiss is granted for the reasons stated below.

## DISCUSSION

**\*3** Defendants have moved to dismiss the claims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. A complaint should not be dismissed unless "it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim[s] which would entitle him to relief.'" *Elliott v. Bronson,* 872 F.2d 20, 22 (2d Cir. 1989) (quoting *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972)); *Massop v. Coughlin,* 770 F.2d 299, 301 (2d Cir. 1985). In addition, the courts "must construe pro se complaints liberally, applying less stringent standards than when a plaintiff is represented by counsel." *Elliott,* 872 F.2d at 21; *Gill v. Mooney,* 824 F.2d 192, 195 (2d Cir. 1987); *Williams v. Vincent,* 508 F.2d 541, 543 (2d Cir. 1974). Where a plaintiff acts pro se, a

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1995 WL 232736 (S.D.N.Y.)
(Cite as: 1995 WL 232736 (S.D.N.Y.))

court must "read his supporting papers liberally, and... interpret them to raise the strongest arguments that they suggest." *Soto v. Walker,* 44 F.3d 169, 173 (S.D.N.Y. 1995). However, I also note that the Court of Appeals has stated that:

As we have repeatedly held, complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.

*Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir. 1987). *See, e.g., Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir. 1988); *Ruderman v. Police Dep't of New York,* 857 F. Supp. 326, 330 (S.D.N.Y. 1994); *Saunders v. Coughlin,* No. 92 Civ. 4289 (SCH), 1994 WL 88108 at *3 (S.D.N.Y. Mar. 15, 1994).

I. Plaintiff's Failure to Allege that the Defendants *Are Personally Responsible for any Violations*

Greenwaldt has failed to allege how the defendants are personally responsible for the injustices he perceives. It is well-settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991)); *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied,* 434 U.S. 1087 (1978). A plaintiff must "allege a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir. 1986). The doctrine of *respondeat superior* is not applicable to § 1983 actions brought against corrections officers. *Monell v. Department of Social Serv. of New York,* 436 U.S. 658, 692 (1978); *Bass,* 790 F.2d at 263; *Candelaria v. Coughlin,* No. 93 Civ. 3212 (RWS), 1994 WL 119146 at *4 (S.D.N.Y. Apr. 4, 1994). Similarly, the fact that a defendant may have been in a "high position of authority is an insufficient basis for the imposition of personal liability" under § 1983. *McKinnon,* 568 F.2d at 934; *see also Wright,* 21 F.3d at 501. There are a number of ways in which a defendant in a supervisory position may be found personally involved in, and therefore liable for, constitutional violations, including: (1) direct

participation, (2) failure to remedy a wrong after learning of it, (3) creation or tolerance of a policy under which unconstitutional practices occurred or were allowed to continue, or (4) gross negligence in managing subordinates who committed the violations. *Wright,* 21 F.3d at 501 (citations omitted).

**\*4** Greenwaldt's complaint and memorandum of law ("Pl.'s Mem." or "Memorandum in Opposition") are difficult to follow. He sets forth the facts at length, but mentions his various legal theories only briefly and without connecting those theories to his factual allegations. Thus, it is difficult to assess the merits of his case. However, construing the complaint liberally as I am constrained to do, I take it that Greenwaldt is displeased with various problems he claims to have faced at Woodbourne, including a misbehavior report, a disbursement and surcharge removed from Greenwaldt's account, and threats by a correctional officer to write up Greenwaldt. Greenwaldt also claims that the defendants failed to respond to his numerous letters. The defendants argue they cannot be said to have been personally involved in these alleged constitutional violations and, therefore, cannot be held liable.

In examining the complaint, it is apparent that the only connection between the defendants moving herein and the facts Greenwaldt recites are the numerous letters Greenwaldt claims to have sent the defendants. However, the defendants cannot be held liable on this basis. It is true that "supervisory liability may be imposed where an official demonstrates 'gross negligence' or 'deliberate indifference' to the constitutional rights of inmates by failing to act on information indicating that unconstitutional practices are taking place." *Wright,* 21 F.3d at 501. However, it is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations. *E.g., id.; Murray v. Coughlin,* No. 91-CV-0476E(H), 1995 WL 128968 at *6 (W.D.N.Y. Mar. 15, 1995); *Cepeda v. Coughlin,* No. 91 Civ. 2469 (RWS), 1995 WL 23566 at *3 (S.D.N.Y. Jan. 19, 1995); *Clark v. Coughlin,* No. 92 Civ. 0920 (RWS), 1993 WL 205111 at *6 n.2 (S.D.N.Y. June 10, 1993), *aff'd,* 17 F.3d 391 (2d Cir. 1993); *Garrido v. Coughlin,* 716 F. Supp. 98, 100 (S.D.N.Y. 1989) (dismissing that portion of complaint against NYSDOCS Commissioner where his only alleged connection to the case was that "he ignored [plaintiff's]

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1995 WL 232736 (S.D.N.Y.)
(Cite as: 1995 WL 232736 (S.D.N.Y.))

letter of protest and request for an investigation of the allegations made in [the] action"). To the extent that Greenwaldt relies upon his allegations that he sent letters to the defendants, his complaint must be dismissed.

In his Memorandum in Opposition, Greenwaldt contends that he does not rely solely on his letter-writing campaign to allege the personal involvement of the prison officials. Instead, he claims that he joined these defendants because (i) Coughlin directed an investigation by Keesler into Greenwaldt; (ii) the defendants implemented various policies that are not to Greenwaldt's liking; and (iii) Annucci failed to maintain the law library.[FN3] The second of these assertions is addressed *infra*. The first and third claims are too vague to withstand defendants' motion to dismiss. Greenwaldt has not made any "specific allegations of fact." *Barr v. Abrams,* 810 F.2d 358, 364 (2d Cir. 1987). In particular, I note that Greenwaldt has not explained how Annucci's alleged failure to maintain the law library has anything to do with the other defendants. Nonetheless, if Greenwaldt elects to do so, he may attempt to replead these allegations within thirty days of the date of this Memorandum and Order.[FN4]

II. *The Temporary Release Program*

A. *Conspiracy Claims*

**\*5** As stated *supra,* Greenwaldt claims that the defendants and numerous political figures, possibly including former Governor Cuomo, the Attorney General, and members of the New York State Senate and Assembly, were engaged in a conspiracy with respect to the temporary release program. (Am. Compl. ¶ 49.) In order to state a claim under § 1983 for conspiracy:

[T]he complaint must contain more than mere conclusory allegations. And while a plaintiff should not plead mere evidence, he should make an effort to provide some "details of time and place and the alleged effect of the conspiracy." Thus, complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; "[d]iffuse and expansive allegations are insufficient, unless amplified by

specific instances of misconduct."

*Dwares v. City of New York,* 985 F.2d 94, 99-100 (2d Cir. 1993) (citations omitted). *See also Leon v. Murphy,* 988 F.2d 303, 311 (2d Cir. 1993); *Polur v. Raffe,* 912 F.2d 52, 56 (2d Cir. 1990) (dismissing plaintiff's claims that defendants conspired to deprive plaintiff of his constitutional rights where plaintiff made only "conclusory allegations" and "diffuse averments" without stating a factual basis for his claim or pleading overt acts indicating the existence of a conspiracy), *cert. denied,* 449 U.S. 937 (1991); *Zemsky v. City of New York,* 821 F.2d 148, 151 (2d Cir.), *cert. denied,* 484 U.S. 965 (1987). In the instant case, Greenwaldt's claim of conspiracy is insufficient to survive a motion to dismiss. It is entirely conclusory; Greenwaldt has failed to plead any factual basis indicating the existence of a conspiracy. Greenwaldt will not, however, be permitted to replead his conspiracy claim because, as explained *infra,* he has no protectible interest in the temporary release program.

B. *No Protected Interest*

Greenwaldt may not replead his conspiracy claim because he does not have a federally protected right to participate in New York's temporary release program. In order to state a claim under the due process clause, Greenwaldt must first allege that he was deprived of a property or liberty interest. Only if he claims such a protected interest is it necessary to go on to determine whether the deprivation of that interest occurred without the process that was due under the circumstances. *See generally Goss v. Lopez,* 419 U.S. 565 (1975); *Board of Regents v. Roth,* 408 U.S. 564 (1972); *White Plains Towing Corp. v. Patterson,* 991 F.2d 1049, 1061-62 (2d Cir.) (stating that "[i]n order to succeed on a claim of deprivation of procedural due process, a plaintiff must establish that state action deprived him of a protected property or liberty interest"), *cert. denied,* 114 S. Ct. 185 (1993). In the instant case, Greenwaldt's claim fails because there is no protected right to participate in New York's temporary release program.

**\*6** It is well-settled that the Constitution itself does not confer a right for an inmate to be conditionally released before serving his full sentence. *Connecticut Bd. of*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1995 WL 232736 (S.D.N.Y.)
(Cite as: 1995 WL 232736 (S.D.N.Y.))

*Pardons v. Dumschat,* 452 U.S. 458, 464 (1981); *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex,* 442 U.S. 1, 7 (1979)* (stating that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence"). The question thus becomes whether New York conferred an enforceable liberty interest in its temporary release program.

In general, a state may create a protected liberty interest through the use of mandatory language and placement of substantive limits on the authority and discretion of state officials. *See Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 461-63 (1989); *Olim v. Wakinekona,* 461 U.S. 238, 249-51 (1983); *Klos v. Haskell,* No. 684, 93-2666, 1995 WL 64776 at *6 (2d Cir. Feb. 10, 1995).* In order for the state to confer such a liberty interest:

(1) the state must have articulated specified "substantive predicates" which limit the discretion of state officials; and (2) it must have employed "explicitly mandatory language," requiring state officials to follow those substantive predicates.

*Klos,* 1995 WL 64776 at *6.*

Turning to New York's temporary release program, it is clear that prisoners do not have a protected interest in being admitted to this program. Neither the governing statute, Correction Law § 851 *et seq.,* nor the regulations, 7 N.Y.C.R.R. § 1900 *et seq.,* contain any assurance of admission into the program. In fact, it is stated explicitly that there are no guarantees of admission:

Participation in the temporary release program shall be a privilege. Nothing contained in this article may be construed to confer upon any inmate the right to participate, or to continue to participate, in a temporary release program.

Correction Law § 855(9). Nothing in the regulations concerning the temporary release program confers a protected entitlement. *See* 7 N.Y.C.R.R. § 1900 *et seq.* In addition, courts that have considered whether inmates in New York have a protected interest in the temporary release program have consistently held that they do not. *See, e.g., Dugar v. Coughlin,* 613 F. Supp. 849, 854-57 (S.D.N.Y. 1985); *Martino v. Gard,* 526 F. Supp. 958, 960 (E.D.N.Y. 1981); *McCormack v. Posillico,* No. 71654, 1995 WL 122170 at *1 (3d Dep't Mar. 23, 1995); *Grant v. Temporary Release Committee,* 619 N.Y.S.2d 106, 106 (2d Dep't 1994); *Szucs v. Recore,* 618 N.Y.S.2d 473, 473 (3d Dep't 1994); *Walker v. Le Fevre,* 598 N.Y.S.2d 345, 345 (3d Dep't 1993). Consequently, Greenwaldt's claim that he was denied due process in connection with the temporary release program is dismissed without leave to replead.

III. *Visitation Policy*

Greenwaldt is disgruntled with the NYSDOCS visitation policy. (Am. Compl. ¶ ¶ 4-6, 8-10.) It appears that Greenwaldt is most displeased about the fact that visits are permitted daily at maximum security facilities but only on weekends and holidays at medium and minimum security facilities. The Supreme Court unambiguously has rejected the argument that "an inmate's interest in unfettered visitation is guaranteed directly by the Due Process Clause." *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 460 (1989). The question thus becomes whether New York has created a protected interest in visitation. *Klos v. Haskell,* No. 684, 93-2666, 1995 WL 64776 at *6 (2d Cir. Feb. 10, 1995). It appears that New York has done so. *See Kozlowksi v. Coughlin,* 871 F.2d 241, 242 (2d Cir. 1989) (explaining that the District Court had ruled that a "state-created liberty interest in prison visitation rights existed, and that proper process was due prior to curtailment of these rights"); *Ricco v. Coughlin,* No. 92-CV-0632E(H), 1995 WL 128959 at *1 (W.D.N.Y. Mar. 15, 1995); *Daniels v. Walker,* No. 93-CV-570, 1995 WL 88186 at *5 (N.D.N.Y. Mar. 1, 1995).

*7 However, to recognize that inmates have a protected interest in visitation is not to say that the NYSDOCS policy infringe upon that interest. The District Court has considered and rejected a virtually identical claim to Greenwaldt's in an earlier decision, *Windley v. Cuomo,* No. 91 Civ. 3774 (TPG), 1992 WL 123172 at *2 (S.D.N.Y. May 27, 1992). In that case, a prisoner at a New York state facility complained that the facility's elimination of weekday visitation violated his rights under

Not Reported in F.Supp., 1995 WL 232736 (S.D.N.Y.)
(Cite as: 1995 WL 232736 (S.D.N.Y.))

the First Amendment, the Eighth Amendment, and the Due Process Clause of the Fourteenth Amendment. *Id.* at *1. Visitation was, however, permitted on weekends and state holidays. *Id.* The District Court dismissed plaintiff's due process claim, explaining that:

Plaintiff's Fourteenth Amendment claim is also without substance. It is true that "[t]he State of New York, by judicial decision, administrative regulation and departmental directive, has granted its prisoners a protected liberty interest in receiving visits from persons of their choice." *Kozlowski v. Coughlin,* 539 F. Supp. 852, 856-57 (S.D.N.Y. 1982). Neither the *Kozlowski* decision nor any provision of state or federal law, however, forbids reasonable regulation of visiting hours by prison officials. There is no showing that the regulation here exceeds the bounds of reasonableness.

*Id.* This reasoning is equally applicable to the instant case, where the policy is the same, *i.e.,* visitation is permitted on the weekends and holidays. Thus, Greenwaldt's claims regarding visitation policy are dismissed with prejudice.

IV. *Equal Protection Claims*

Greenwaldt argues in his Memorandum in Opposition that his complaint should not be dismissed because, he claims, the defendants have violated the Equal Protection Clause of the Fourteenth Amendment with respect to visitation policy and the temporary release program. (Pl.'s Mem. at 7). Greenwaldt claims in his Memorandum in Opposition that:

Plaintiff can *decisively* demonstrate, if permitted to proceed with discovery, that discrimination exists under the rules, regulations, practices and policies of the defendants in relation to visits, temporary release, disciplinary programs, etc.

(Pl.'s Mem. at 7-8 (emphasis in original).)

Greenwaldt's claims that he will be able to establish discrimination by the defendants if he is permitted to engage in discovery does not preclude dismissal of his equal protection claims at this time. Greenwaldt's equal protection claims are properly dismissed at this time because they are vague and inconclusive. *See Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir. 1987). If Greenwaldt seeks to do so, he may replead his equal protection claims within thirty days.

*CONCLUSION*

With respect to the defendants moving herein, *i.e.,* Coughlin, Annucci, Butler, Coombe, Recore, and Hanslmaier, Greenwaldt's complaint is dismissed with prejudice in its entirety, with the limited exception of those particular claims that Greenwaldt has been granted leave to replead within thirty days. That is, within thirty days of the date of this Memorandum and Order, Greenwaldt may replead his allegations that Coughlin directed an investigation by Keesler into Greenwaldt, that Annucci failed to maintain the law library, and that the defendants violated his right to equal protection with respect to visitation policy and the temporary release program.

FN1. Reference is made to the Amended Complaint dated February 25, 1994.

FN2. Inmates whose names begin with letters A-L would have visitations on Saturday, and those whose names begin with letters M-Z on Sunday. On the following weekend, the order would be reversed. (Am. Compl. ¶4.)

FN3. As Greenwaldt puts it in his memorandum:

In the present case, COMMISSIONER COUGHLIN not only learned of the deprivations through letters from the plaintiff; but went so far as to direct an investigation by the defendant KEESLER. Exactly what more plaintiff must do to show that the Commissioner has direct knowledge and is condoning his subordinates [sic] actions or lack of actions, as the case may be, is beyond

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1995 WL 232736 (S.D.N.Y.)
(Cite as: 1995 WL 232736 (S.D.N.Y.))

the comprehension of the plaintiff.... Plaintiff does not join the Commissioner of Correctional Services and three Deputy Commissioners by virtue of their failure to respond to plaintiff's complaints in letters addressed to them respectively. He (plaintiff) joins the Commissioner and the three Deputy Commissioners by virtue of the investigation ordered by COMMISSIONER COUGHLIN and the implementation of various policy Directives signed and ordered by the Deputy Commissioners and condoned by the Commissioner.... Counsel either fails to understand the responsibilities of either the Commissioner or the three Deputy Commissioners or, while understanding their respective responsibilities would rather distort the factual position of the plaintiff. The perfect example of the above is Deputy Commissioner Annucci's total disregard of his responsibility to maintain the law libraries with the proper materials.

(Pl.'s Mem. at 3-4.) I note that Greenwaldt's allegations regarding the investigation and the law library are glaringly absent from the complaint.

FN4. I note that it may be that, if pleaded properly, Greenwaldt's claim that Annucci failed to maintain the law library might state a claim. For example, it has been held that:

Prisoners have a constitutional right of access of the courts. Thus prison authorities must assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law. The right of access to the courts must ensure that prisoners have a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts. Courts have held that prisoners do not have a right to access law books per se, but must be provided with any of several methods designed to provide meaningful access to the courts

including the use of trained legal assistants.

*Bellamy v. McMickens,* 692 F. Supp. 205, 214 (S.D.N.Y. 1988). *See Morello v. James,* 810 F.2d 344, 347 (2d Cir. 1987) (stating that "[w]here a prisoner chooses to proceed pro se with his appeal, the state is required to provide affirmative assistance in the form of adequate law libraries or trained legal assistance"). However, Greenwaldt's allegations are, again, too conclusory to assess, and must be dismissed.

S.D.N.Y. 1995

Greenwaldt v. Coughlin

Not Reported in F.Supp., 1995 WL 232736 (S.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.